IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 5, 2019 Session

**RICHARD EGAN v. RACHAEL MARIE BAILEY EGAN**

**Appeal from the Chancery Court for Williamson County**
**No. 43616     Michael W. Binkley, Chancellor**

————————————————————

**No. M2018-01858-COA-R3-CV**

————————————————————

In this appeal from a final decree of divorce, the husband contends the trial court abused its discretion in awarding spousal support. He challenges the type, amount, and duration of the alimony awarded. Discerning no abuse of discretion, we affirm.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Adrian H. Altshuler, Caroline B. Altshuler, and Jodi Melind, Franklin, Tennessee, for the appellant, Richard Egan.

Larry Hayes, Jr. and Rachel M. Thomas, Nashville, Tennessee, for the appellee, Rachael Marie Bailey Egan.

**OPINION**

**I.**

By the time of trial, the divorcing parties, Richard Egan ("Husband") and his wife of nearly 20 years, Rachael Egan ("Wife"), had narrowed the issues significantly. But they were still far apart on the issue of spousal support. Husband proposed paying Wife $5,000 per month for five years. Wife proposed that Husband pay $30,000 per month indefinitely.

The testimony concerning spousal support came primarily from Husband and Wife, who were 47 and 46, respectively. When the parties married in 1996, they lived in

California. Husband worked as "a day-to-day manager" for musical acts as part of a management company. Wife worked as a sales associate for a "high-end women's store."

Within a couple of years after the marriage, Husband had formed his own management company, Hard 8 Management. In 2010, after a move to Tennessee, Husband began managing a country/southern rock artist, who became Husband's biggest act. In the five calendar years prior to the 2016 trial, Husband reported income for federal tax purposes of $685,110 in 2011, $926,198 in 2012, $1,469,410 in 2013, $3,657,703 in 2014, and $424,080 in 2015. Sources of income included salary and bonuses from Husband's management company, rental income, royalties, and, in years 2013, 2014, and 2015, significant gains from the sale of capital assets. The parties stipulated that, as of the day of trial, Husband had received gross income from his management company of $1,595,000 and that he would receive two additional payments of $10,000 before the year-end.

Wife stopped working outside of the home in 1998 after the birth of the couple's first child. Over the course of the marriage Husband and Wife had three more children. According to Wife, she primarily cared for the children while Husband served as the wage earner.

Prior to the divorce filing, the family enjoyed a high standard of living. But Husband claimed that they maintained their lifestyle only through the accumulation of substantial debt and that the couple was heading toward bankruptcy when the divorce was filed. He testified that their difficult financial circumstances prompted the couple's move to Tennessee to take advantage of its lower cost of living. Still, they retained their home in Los Angeles and built a seven-bedroom home in Franklin, Tennessee.

The parties agreed to the value of their marital estate, nearly $4.4 million. Much of that value was composed of cash that had been accumulated during the course of the divorce. The other significant marital assets were the LA and Franklin homes and the ownership interest in Hard 8 Management.

In granting the parties a divorce, the court equally divided the marital estate. Much of Wife's share of the estate came in the form of cash as the division contemplated the sale of the marital residence. Among other marital assets, Husband received the LA home, valued at $1.4 million, and the interest in Hard 8 Management.

The court also awarded Wife alimony in futuro of $17,500.00 per month. In reaching its alimony decision, the court analyzed each of the relevant factors for "determining the nature, amount, length of term, and manner of payment [of support and maintenance]." Tenn. Code Ann. § 36-5-121(i) (2017). But before doing so, it made what it characterized as "preliminary findings." Among other things, the court found that

2

"Husband's average gross monthly income is in the range of $134,635.00." Concerning Husband's assertion that the couple was heading toward bankruptcy, the court was unconvinced and found the financial picture presented misleading.

> [T]he Court finds that, particularly during the time that the parties lived in California, there was a period of time where Husband's income did not keep up with the parties' regular expenses. Thus, the parties experienced a cash flow gap that periodically happens to people with unusual income variations . . . . Despite the cash flow gap, the parties continued to enjoy a high standard of living. In order to satisfy their mounting debt serviced by loans, family members, and some lifestyle cutback, it became apparent that there was a serious problem and there was a possibility of filing bankruptcy against the debt that had accumulated. Husband sold large assets to service the parties' debt, but the problem was that there was a tax consequence — a capital gain flat tax applied to gain realized from the sale . . . . The parties then had to pay tax on the capital gains from the sale of assets, which became a vicious cycle. The Court acknowledges that Husband has made some hard decisions in order to get the parties out of debt and has used his talents to get back on his feet. The Court respects Husband for doing so and applauds him for his hard work and effort to rebuild. None-the-less, the Court does not believe that when the divorce was filed, the parties were as close to bankruptcy as Husband represented. It bothers the Court that the full picture was not presented to it on this issue, but the Court believes that it has the full picture now.

The court concluded its preliminary alimony findings with the observation that "there was inconsistent testimony on the alimony factors and gross inconsistency in the parties' regular testimony."

Dissatisfied with the award of spousal support, Husband moved for "amended and additional findings relevant to the issue of alimony" or, in the alternative, "to alter or amend the judgment as to the amount and type of alimony awarded." Husband suggested that "an alimony award in the range of $7,000.00 per month would be more than sufficient for the reasonable needs of Defendant Wife, encourage her to work to satisfy her wants, discourage her from overspending, and be an equitable award." Husband also suggested that the award should be "rehabilitative alimony or transitional alimony instead of alimony *in futuro*."

The court denied Husband's motion. It explained that, "if the alimony statute means what it says, that an award of alimony in futuro is appropriate to allow the disadvantaged spouse a standard of living reasonably comparable to the standard enjoyed during the marriage, then the amount of $17,[5]00 per month in alimony in futuro, before the payment of taxes, is reasonable."

3

## II.

On appeal, Husband argues that the trial court erred in awarding Wife alimony in futuro as opposed to rehabilitative or transitional alimony. He argues that the evidence at trial did not support the trial court's award to Wife of $17,500 per month. Finally, Husband argues that the balancing of the statutory support and maintenance factors did not justify alimony of an indefinite term.

In a non-jury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d). We give great deference to the trial court's credibility assessments. *See Watson v. Watson*, 309 S.W.3d 483, 490 (Tenn. Ct. App. 2009). We do not disturb "factual findings based on witness credibility unless clear and convincing evidence supports a different finding." *Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 348 (Tenn. Ct. App. 2009). Our review of questions of law is de novo, with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

Trial courts are accorded "broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). We do not disturb a spousal support decision unless "the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* Although "[t]he abuse of discretion standard of review does not . . . immunize a lower court's decision from any meaningful appellate scrutiny," it does "envision[] a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

### A.

Husband submits that alimony in futuro was inappropriate here because Wife had the capacity for self-sufficiency. He also contends that the evidence does not support the court's finding that Wife could not be rehabilitated or the finding that the family enjoyed a very high standard of living and would continue to do so after the divorce.

Alimony in futuro is "intended to provide support on a long-term basis until the death or remarriage of the recipient." *Gonsewski*, 350 S.W.3d at 107; Tenn. Code Ann. § 36-5-121(f)(1) (2017). This long-term support is awarded when one spouse is relatively disadvantaged and rehabilitation is not feasible. Tenn. Code Ann. § 36-5-121(f)(1). Rehabilitation is not feasible if,

4

the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

*Id.* Even though awards of this type of spousal support are disfavored, alimony in futuro may be awarded under the proper circumstances. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Gonsewski*, 350 S.W.3d at 109.

The trial court found that "Wife cannot be reasonably rehabilitated and, regardless of the efforts that she uses including increased education and increased earning capacity that may come as a result of that, the Court cannot see how Wife will ever reach near the earning capacity of Husband." The proof established that Wife had a high school diploma and some college course work, but she had not worked outside of the home in 18 years. She last worked outside the home in the retail field. Also, the court found that, despite making significant strides, "Wife still ha[d] some semblance of mental health problems and personality issues."

On appeal, Husband places particular emphasis on the court's findings concerning the parties' standard of living prior to the divorce and Husband's anticipated standard of living after the divorce. Husband characterizes the parties' pre-divorce standard of living as "an illusion, fueled by crippling debt." As for his expected standard of living after the divorce, Husband states that his "livelihood is completely dependent upon the success of the artists he manages, with whom he has no employment contracts and no guaranteed income." Husband also notes that his "most popular client was not even touring, meaning Husband expected to earn little from the management of said client for the foreseeable future."

The court specifically rejected Husband's contention regarding the pre-divorce standard of living. The court found that the couple experienced cash flow issues that resulted in the accumulation of debt, particularly prior to their move to Tennessee. Still, the couple enjoyed the "tangible and intangible rewards as the result of a high income." The court also found that Husband and Wife "took nice trips, including ski trips and trips to various islands," "enjoyed nice cars and nice homes to live in," and "were able to afford nannies and housekeepers at times." Perhaps more importantly, the court made an adverse credibility determination, finding that the parties were not "as close to bankruptcy as Husband represented" and that Husband had not presented the "full picture."

As for Husband's anticipated standard of living after the divorce, the court found Husband's "earning capacity is approximately $135,000.00 per month." Historically,

5

"Husband's average gross monthly income [wa]s in the range of $134,635.00." As Wife notes on appeal, the average found by the trial court was just under the five-year monthly average as reflected in the parties' tax returns for 2012 through 2015. The court's finding was also consistent with the parties' stipulation concerning Husband's 2016 gross income from his management company. Although Husband offered reasons why he might not replicate his 2016 financial success in subsequent years, the evidence does not preponderate against the court's findings relative to Husband's earning capacity.[1]

The court did not abuse its discretion in awarding alimony in futuro. Although we agree with Husband that Wife had the capacity for self-sufficiency, the record supports the court's finding that Wife lacked the capacity to achieve, with reasonable effort, an earning capacity that will permit her to enjoy the same standard of living expected to be available to Husband.

B.

Husband submits that the amount of alimony was inappropriate because Wife did not demonstrate a need for $17,500 and he does not have the ability to pay that amount. Of the statutory alimony factors, "the two most important factors considered are the need of the disadvantaged spouse and the obligor spouse's ability to pay." *Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn. 2002). "[T]he disadvantaged spouse's need is the threshold consideration." *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007).

On the threshold consideration, Husband complains that the trial court "failed to make a specific finding as to the amount of Wife's needs." He also complains that, in her sworn income and expense statement, Wife only "alleged expenses totaling $15,604.00 per month." And Wife's statement is "not reliable in that most of the [expense] items are listed in italics with an asterisk indicating that those expenses are merely estimations, not concrete expenses evidencing her need."

Husband does not dispute that Wife has a need. And as Wife notes, we have not required trial courts to find a specific dollar amount of need in every instance. *See Andrews v. Andrews*, 344 S.W.3d 321, 343 (Tenn. Ct. App. 2010) ("[T]he trial court's failure to make a finding on the specific amount of Wife's need d[id] not in and of itself render the alimony award an abuse of discretion."). Here, we can deduce an approximate

---

[1] Husband notes that his commissions as an artist manager can be impacted by a number of factors beyond his control, including the popularity of the artist. He also notes that he does not have a contract with his most popular client or any of the artists he manages and that all or one of them could leave. The statute takes such circumstances into account by authorizing the modification of an award of alimony in futuro "upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A).

amount of need from the court's findings concerning what Wife was capable of earning from work and returns on her share of the marital estate along with the alimony award.[2]

As Husband complains, the amount of alimony awarded did exceed Wife's expense estimates. The court found some of the estimated expenses were "extravagant," while others were reasonable. But the court's award took into consideration "the tax liability associated with the alimony that [Wife] is going to have to receive in order to meet the standards under the alimony statute."[3] Because Wife did not include income taxes in her estimates, an award of alimony in excess of the expenses listed was supported by the evidence.

Based on the court's findings, Husband had the ability to pay the alimony awarded. The court rejected Husband's contention that his gross income post-divorce would be $35,340 per month. Instead, the court found Husband's post-divorce earning capacity was $135,000 per month. As noted above, the higher amount found by the court was consistent with the parties' stipulation concerning Husband's 2016 gross income from his management company. In making this finding, the court again made an adverse credibility determination against Husband, noting its "disappoint[ment] in Husband for miscalculating his income."

C.

Finally, Husband submits that the statutory alimony factors do not support an indefinite alimony award. Specifically, he argues that the evidence preponderated against the court's factual findings relative to factors (1), (8), (9), (10), and (12).

Factor 1 requires the trial court to consider the "[t]he relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources." *See* Tenn. Code Ann. § 36-5-121(i)(1). We have already discussed Husband arguments concerning factor 1. The evidence does not preponderate against the court's findings concerning the relative earning capacity or need of the parties.

Factor 8 looks at "[t]he provisions made with regard to the marital property." *Id.* § 36-5-121(i)(8). Husband faults the court for not properly considering "the significant interest and dividend income Wife expected to earn from the principal of her cash assets." He also complains that the court did not appreciate that he would receive relatively illiquid assets as part of the division. But the court specifically found that Wife

---

[2] The parties stipulated "that a reasonable rate of return on money invested would be approximately 3.5% [per annum]."

[3] The parties also stipulated to effective federal tax for various levels of taxable income.

would have approximately $1 million for investment and that those funds would earn a stipulated 3.5% per annum. We also note that the bulk of Husband's illiquid assets, his ownership interest in Hard 8 Management and the LA home, were tied to his post-divorce income.

Factor 9 requires consideration of "[t]he standard of living of the parties established during the marriage." *Id.* § 36-5-121(i)(9). The court found "that the parties enjoyed a very high standard of living during their marriage." As previously discussed, the evidence does not preponderate against the court's findings concerning the standard of living established during the marriage.

Factor 10 evaluates "[t]he extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party." *Id.* § 36-5-121(i)(10). Husband contends that "Wife was [not] a traditional, primary caregiver," and he "question[s] the extent of her intangible contributions."

The court found that both Husband and Wife made tangible and intangible contributions to the marriage. With respect to Wife, the court found that she "was the primary caretaker of the parties' children." Although Husband offered testimony indicating that Wife relied on nannies and au pairs to care for the children, the court credited Wife's testimony that she was actively involved in the rearing of the parties' four children. We decline to disturb this finding on appeal.

Factor 12 permits evaluation of "[s]uch other factors . . . as are necessary to consider the equities between the parties." *Id.* § 36-5-121(i)(12). The factors may include "the tax consequences to each party." *Id.* Husband complains that "[t]he Trial Court took into account Wife's tax liability when ordering alimony, yet there [wa]s no finding that the Trial Court likewise took into account Husband's tax liability." He also complains that the court imputed "a sinister motive in Husband paying quarterly taxes in 2016."

Husband does not elaborate on the tax liability he submits the court overlooked. Based on our review of its order, the court took into account income taxes when it evaluated his earning capacity. And the court found that Husband's monthly income after taxes would be approximately $100,000. We also note that the court considered the deductibility of Husband's alimony payments to Wife.

As for Husband's final complaint, the court found that Husband had overpaid estimated quarterly taxes to the Internal Revenue Service during 2016. Based on the proof offered, the court determined that the overpayments were part of an attempt by

Husband to disguise his actual after-tax income.  On this record, we discern no error in the trial court making such a determination.
.

## III.

We discern no abuse of discretion in the type, amount, or duration of the alimony awarded.  So we affirm the judgment of the trial court.


_____
W. NEAL MCBRAYER, JUDGE